**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| GUENTER SCHOTT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NOBILIS HEALTH CORP., CHRISTOPHER H. LLOYD, and KENNETH J. KLEIN,<br><br>Defendants. | **Case No. 4:16-CV-141**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

## CLASS ACTION COMPLAINT

Plaintiff Guenter Schott ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nobilis Health Corp. ("Nobilis" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Nobilis securities between April 2, 2015 and January 6, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Nobilis, together with its subsidiaries, acquires and manages ambulatory surgical centers (ASCs) and healthcare facilities in the United States.  Its ASCs are licensed ambulatory surgery centers that provide scheduled surgical procedures in clinical specialties, including orthopedic surgery, podiatric surgery, ENT, pain management, gastro-intestinal, gynecology, and general surgery. As of March 18, 2015, the Company owned and managed 10 healthcare facilities in Texas and Arizona; a surgical hospital in Houston; six ambulatory surgery centers; two MRI centers; and an urgent care center. The Company was formerly known as Northstar Healthcare Inc. ("Northstar") and changed its name to Nobilis Health Corp. in December 2014. Nobilis was founded in 2007 and is headquartered in Houston, Texas. The Company's shares trade on the NYSE under the ticker symbol "HLTH."

3.      In September 2014, Nobilis, then doing business as Northstar, acquired First Surgical Partners Holdings, Inc. ("First Surgical") after first establishing First Nobilis, LLC ("First Nobilis"), a Texas limited liability company, to assume First Surgical's operations (the "First Nobilis Acquisition").  In December 2014, Nobilis acquired Athas Health, LLC ("Athas") (the "Athas Acquisition").

4.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically,

2

defendants made false and/or misleading statements and/or failed to disclose that: (i) Nobilis's financial statements contained numerous errors concerning the Company's classification of warrants and options, business combination accounting, share-based compensation, and other financial and operating results; (ii) Nobilis had overstated its net income for the year ended December 31, 2014 by more than $4 million; (iii) Nobilis had overstated its net income for the quarter ended March 31, 2015 by more than $3.27 million; and (iv) as a result of the foregoing, Nobilis's public statements were materially false and misleading at all relevant times.

5.      On September 2, 2015, Calvetti Ferguson P.C. ("Calvetti Ferguson") tendered its resignation as Nobilis's auditor, effective as of August 14, 2015.   Concurrently, the Company's Audit Committee and Board of Directors respectively recommended and approved Nobilis's engagement of Crowe Horwath LLP ("Crowe Horwath") as the Company's new auditor.

6.      On October 9, 2015, *Seeking Alpha* published an article entitled "Nobilis: About To Fall From Nobility, Part I, 65%+ Downside" (the "October *Seeking Alpha* Report").   The October *Seeking Alpha* Report raised a number of questions regarding Nobilis' accounting practices.

7.      As a result of this news, shares of Nobilis fell $1.42, or over 27%, to close at $3.82 on October 9, 2015.

8.      On November 11, 2015, post-market, Nobilis announced that the Company's preliminary results for the third quarter of 2015 and the Company's final earnings release would be delayed.   The Company stated, in part:

> In August 2015, the Company engaged Crowe Horwath as its independent registered public accounting firm. "Crowe has informed us that their quarterly review procedures will not be completed within the deadline for the SEC filing of our Form 10-Q," said Kenny Klein, the Company's Chief Financial Officer. "Management and Crowe have identified certain non-cash accounting differences arising in our conversion from U.S. GAAP and IFRS rules and opening balance

sheet valuations which will delay the Company's earnings release and the filing of its quarterly financial statements. Therefore, the Company will not issue its Quarterly Report on Form 10-Q for the three months ended September 30, 2015 on November 12, 2015 as previously anticipated."

9.      As a result of this news, shares of Nobilis fell $0.65, or over 18%, to close at $2.95 on November 12, 2015.

10.     On January 5, 2016, post-market, Nobilis confirmed what the Company had strongly implied by failing to announce its quarterly earnings in November 2015.  In a current report filed on Form 8-K with the SEC, Nobilis disclosed that its financial statements for the fiscal year ended December 31, 2014, the quarters ended March 31, 2015 and June 30, 2015 and the financial statements in its updated S-1 registration statement filed with the SEC on October 23, 2015 can no longer be relied upon.  The Company stated, in part:

> The financial statements for the [periods at issue] contain errors related to (1) accounting for warrants and options issued in the Company's private placements in 2013, 2014 and 2015 and options granted to non-employees; (2) business combination accounting with respect to the Athas and First Nobilis transactions that occurred in December and September 2014, respectively; (3) reclassification of contingently redeemable noncontrolling interests to temporary equity; (4) share-based compensation matters; and (5) calculations of fully diluted shares outstanding for application of the treasury stock method, as more fully described below.

11.     On January 7, 2016, pre-market, Nobilis announced that defendant Christopher J. Lloyd ("Lloyd") had resigned as the Company's Chief Executive Officer ("CEO").

12.     As a result of this news, Nobilis stock fell $0.63, or more than 20%, to close at $2.47 on January 7, 2016.

13.     On January 13, 2016, pre-market, Nobilis announced that the Company had filed its financial and operating results for the third quarter of 2015 on Form 10-Q with the SEC (the "Q3 2015 10-Q") and that it had filed all restated financial results arising from the restatement previously announced on January 5, 2016 (collectively, the "Financial Restatements").

14.     As Nobilis had disclosed on January 5, 2016, the Financial Restatements reflected numerous reclassifications with respect to warrants and options, business combination accounting, share-based compensation, and the other issues described *supra* at ¶ 10.

15.     However, Nobilis's Financial Restatements also revealed that the Company had overstated its net income for 2014 and the first quarter of 2015.  In the Company's original annual report for the year ended December 31, 2014 (the "2014 10-K"), Nobilis had reported net income of $20.25 million.   In the Company's amended annual report for the year ended December 31, 2014 (the "2014 10-K/A"), however, Nobilis restated its net income for 2014 as $16.19 million—approximately $4 million, or 20%, lower than Nobilis had reported in its 2014 10-K.

16.     Likewise, in the Company's original quarterly report for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"), Nobilis had reported net income of $3.28 million.   In the Company's amended quarterly report for the quarter ended March 31, 2015 (the "2015 Q1 10-Q/A"), however, Nobilis restated its net income for the quarter as ***only $2,000***—more than $3.27 million, or 99%, lower than Nobilis had reported in its Q1 2015 10-Q.

17.     Later on January 13, 2016, *Seeking Alpha* published a report authored by a contributor under the name Southern Equities, entitled "Nobilis Earnings: Not What They Appear To Be" (the "January *Seeking Alpha* Report").  Addressing Nobilis's Q3 2015 10-Q, the *Seeking Alpha* Report stated, in part:

> While results superficially appear to show financial strength, a deeper dive unveils the cold hard reality that Nobilis just had a disastrous [third] quarter.
>
> On an apples-to-apples basis, Nobilis actually reported adjusted EBITDA of **$5.3mn, or 40% below the original guidance of $9mn.** Management failed to back out the bargain purchase gain of $4.358mn. This was a one-time, below the operating line, non-cash item. In our years of analyzing financial statements, this non-GAAP accounting treatment was one of the most egregious we have seen.

. . .

Nobilis also had **negative operating cash flow** in Q3, a significant red flag on the quality of earnings, and days sales outstanding continued to rise. We believe that the fundamental performance of the business is in question.

We also note that neither this press release, nor the press release announcing the sudden departure of the CEO mentioned Q4 preliminary results. Nor did they reaffirm 2015 adjusted EBITDA guidance of $42mn, or 2016 adjusted EBITDA guidance of $65mn, both given on the Q2 earnings press release.

18.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

19.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

20.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

21.    Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

22.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

23.     Plaintiff, as set forth in the attached Certification, acquired Nobilis securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

24.     Defendant Nobilis is incorporated in British Columbia, Canada, and the Company's principal executive offices are located at 4120 Southwest Freeway, Suite 150, Houston, Texas 77027.  Nobilis's common stock trades on the NYSE under the ticker symbol "HLTH."   Nobilis may be served with process by and through its registered agent at CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

25.     Defendant Lloyd served at all relevant times as the Company's CEO until his resignation on January 7, 2016.  Defendant Lloyd may be served with process at 3616 Vintage Place, Dallas, Texas 75214, or wherever he may be found.

26.     Defendant Kenneth J. Klein ("Klein") has served at all relevant times as the Company's Chief Financial Officer and Chief Accounting Officer.  Defendant Klein may be served with process at 4120 Southwest Freeway, Suite 150, Houston, Texas 77027, or wherever he may be found.

27.     The defendants referenced above in ¶¶ 25-26 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     Nobilis, together with its subsidiaries, acquires and manages ambulatory surgical centers and healthcare facilities in the United States.  Its ASCs are licensed ambulatory surgery centers that provide scheduled surgical procedures in clinical specialties, including orthopedic

surgery, podiatric surgery, ENT, pain management, gastro-intestinal, gynecology, and general surgery.  As of March 18, 2015, the Company owned and managed 10 healthcare facilities in Texas and Arizona; a surgical hospital in Houston; six ambulatory surgery centers; two MRI centers; and an urgent care center.  The Company was formerly known as Northstar Healthcare Inc. and changed its name to Nobilis Health Corp. in December 2014.  Nobilis was founded in 2007 and is headquartered in Houston, Texas.  The Company's shares trade on the NYSE under the ticker symbol "HLTH."

29.     In September 2014, Nobilis, then doing business as Northstar, acquired First Surgical after first establishing First Nobilis, a Texas limited liability company, to assume First Surgical's operations.  In December 2014, Nobilis acquired Athas.

### Materially False and Misleading Statements Issued During the Class Period

30.     The Class Period begins on April 2, 2015, when Nobilis filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K").  For 2014, the Company reported net income of $20.25 million, or $0.15 per diluted share, on revenue of $84.03 million, compared to net income of $6.85 million, or $0.03 per diluted share, on revenue of $31.13 million for 2013.

31.     For 2014, Nobilis reported $107.6 million in total liabilities and shareholders' equity; $18.99 million in noncontrolling interests; $22.45 million in goodwill; $19.54 million in intangible assets; and $1.64 million in depreciation and amortization expense.

32.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

8

33.     On May 14, 2015, Nobilis filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, the Company reported net income of $3.28 million, or $0.02 per diluted share, on revenue of $37.12 million, compared to net income of $0.92 million, or $0.01 per diluted share, on revenue of $12.12 million for the same period in the prior year.

34.     For the quarter, Nobilis additionally reported $106.5 million in total liabilities and shareholders' equity; $18.99 million in noncontrolling interests; $21.77 million in goodwill; $19.22 million in intangible assets; and $0.64 million in depreciation and amortization expense.

35.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.     On August 14, 2015, Nobilis filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, the Company reported net income of $2.15 million, or a net loss of $0.02 per diluted share, on revenue of $48.87 million, compared to net income of $2.72 million, or $0.01 per diluted share, on revenue of $15.11 million for the same period in the prior year.

37.     For the quarter, Nobilis additionally reported $155.55 million in total liabilities and shareholders' equity; $21.88 million in noncontrolling interests; $32.54 million in goodwill; $20.15 million in intangible assets; and $0.96 million in depreciation and amortization expense.

38.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was

accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.     On August 28, 2015, Nobilis filed a Registration Statement on Form S-1 with the SEC in connection with the sale of 22,661,188 common shares and 3,923,834 warrants to purchase common shares of Nobilis stock (the "August 2015 S-1").  In the August 2015 S-1, Nobilis reiterated financial and operating results that the Company had previously announced in the SEC filings referenced in ¶¶ 30-31, 33-34, and 36-37.

40.     The August 2015 S-1 was signed by the Individual Defendants pursuant to the requirement of the Securities Act of 1933.

41.     On September 28, 2015, Nobilis filed Amendment No. 1 to the Company's Q2 2015 10-Q on Form 10-Q/A with the SEC (the "Q2 2015 10-Q/A").  On the Q2 2015 10-Q/A, the Company stated, in relevant part:

> Nobilis Health Corp. (the "Company") is filing this Amendment No. 1 (this "Amendment") to its quarterly report on Form 10-Q for the quarterly period ended June 30, 2015 (the "Original Form 10-Q"), which was filed with the Securities and Exchange Commission (the "SEC") on August 14, 2015, in response to comments from the SEC regarding a confidential treatment request made by the Company with respect to Exhibit 10.1 to the Original Form 10-Q. The Company is refiling the agreement contained in Exhibit 10.1 and re-instating certain information previously redacted from such Exhibit.
>
> Except as described above, no other changes have been made to the Original Form 10-Q.

42.     On October 23, 2015, Nobilis filed Amendment No. 1 to Form S-1 with the SEC, amending the Company's August 2015 S-1 (the "October 2015 S-1/A").  In the October 2015 S-1/A, Nobilis reiterated financial and operating results that the Company had previously announced in the SEC filings referenced in ¶¶ 36-37.

43.     The October 2015 S-1/A was signed by the Individual Defendants pursuant to the requirement of the Securities Act of 1933.

44.     The statements referenced in ¶¶ 30-43 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Nobilis' financial statements contained numerous errors concerning the Company's classification of warrants and options, business combination accounting, share-based compensation, and other financial and operating results; (ii) Nobilis had overstated its net income for the year ended December 31, 2014 by more than $4 million; (iii) Nobilis had overstated its net income for the quarter ended March 31, 2015 by more than $3.27 million; and (iv) as a result of the foregoing, Nobilis's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

45.     On September 2, 2015, Calvetti Ferguson tendered its resignation as Nobilis's auditor, effective as of August 14, 2015.  Concurrently, the Company's Audit Committee and Board of Directors respectively recommended and approved Nobilis's engagement of Crowe Horwath as the Company's new auditor.

46.     On October 9, 2015, *Seeking Alpha* published an article entitled "Nobilis: About To Fall From Nobility, Part I, 65%+ Downside".  The October *Seeking Alpha* Report alleged a number of accounting red flags at Nobilis.

47.     As a result of this news, shares of Nobilis fell $1.42, or over 27%, to close at $3.82 on October 9, 2015.

48.     On November 11, 2015, post-market, Nobilis announced that the Company's preliminary results for the third quarter of 2015 and the Company's final earnings release would be delayed.  The Company stated, in part:

> In August 2015, the Company engaged Crowe Horwath as its independent registered public accounting firm. "Crowe has informed us that their quarterly review procedures will not be completed within the deadline for the SEC filing of our Form 10-Q," said Kenny Klein, the Company's Chief Financial Officer. "Management and Crowe have identified certain non-cash accounting differences arising in our conversion from U.S. GAAP and IFRS rules and opening balance sheet valuations which will delay the Company's earnings release and the filing of its quarterly financial statements. Therefore, the Company will not issue its Quarterly Report on Form 10-Q for the three months ended September 30, 2015 on November 12, 2015 as previously anticipated."

49.     As a result of this news, shares of Nobilis fell $0.65, or over 18%, to close at $2.95 on November 12, 2015.

50.     On January 5, 2016, post-market, Nobilis confirmed what the Company had strongly implied by failing to announce its quarterly earnings in November 2015.  In a current report filed on Form 8-K with the SEC, Nobilis disclosed that its financial statements for the fiscal year ended December 31, 2014, the quarters ended March 31, 2015 and June 30, 2015 and the financial statements in its updated S-1 registration statement filed with the SEC on October 23, 2015 can no longer be relied upon.  The Company stated, in part:

> The financial statements for the [periods at issue] contain errors related to (1) accounting for warrants and options issued in the Company's private placements in 2013, 2014 and 2015 and options granted to non-employees; (2) business combination accounting with respect to the Athas and First Nobilis transactions that occurred in December and September 2014, respectively; (3) reclassification of contingently redeemable noncontrolling interests to temporary equity; (4) share-based compensation matters; and (5) calculations of fully diluted shares outstanding for application of the treasury stock method, as more fully described below.
>
> . . .

*Accounting for warrants and options issued in private placements and options issued to non-employees as liabilities . . .*

The impact of the proper application of ASC 815-40 is a reclassification from equity to liabilities of $2.4 million during 2013 for warrants and options requiring liability classification and recognition of $442 thousand of income during 2013 for the decrease in the value of such liabilities from the date of issuance through year- end. The impact for 2014 of the proper application of ASC 815-40 is estimated to be a recognition of $3.7 million of expense for increases in the value of such liabilities through December 31, 2014 (including the effect of additional issuances and exercises of such instruments).

. . .

*Recognition of the full fair value of noncontrolling interests in the acquisition of First Nobilis as required by U.S. GAAP instead of at a pro-rata value permitted under IFRS . . .*

The impact of the proper application of ASC 805 as of the date of acquisition (September 2014) is a reduction in noncontrolling interests of $2.0 million, a decrease in acquired intangible assets of $1.4 million and a decrease in recognized goodwill of $0.6 million, in each case beginning with the period ended September 30, 2014. Amortization expense recognized since the acquisition date will decrease by $15 thousand quarterly because of this change.

. . .

*Adjustments to the acquisition accounting for the Athas transaction . . .*

The impact of the proper application of ASC 805 as of the date of acquisition is an increase in acquired intangible assets of $1.4 million, a reduction of liabilities of $260 thousand and a decrease in recognized goodwill of $1.7 million, in each case beginning with the period ended December 31, 2014. Amortization expense recognized since the acquisition date will increase by $15 thousand quarterly because of this change.

The impact of the proper application of ASC 310-10-25-3 as of the date of acquisition is a decrease in acquired accounts receivable of $1.7 million, a reduction in accrued liabilities of $0.3 million and a corresponding net increase in goodwill of $1.4 million, in each case beginning with the period ended December 31, 2014. This correction of the Company's accounting policies will impact the timing of revenue recognition in the future. However, this change had no impact on 2014 revenues given the proximity of the acquisition date for Athas to the Company's 2014 fiscal year end. Revenues and accounts receivable for and as of the three months ended March 31, 2015 and the six months ended June 30, 2015 increased by $735 thousand.

. . .

13

*Reclassification of Contingently Redeemable Noncontrolling Interests to Temporary Equity . . .*
The impact of the proper application of ASR 268 is a reclassification of $12.9 million of contingently redeemable noncontrolling interests from "permanent" equity to "temporary" or mezzanine equity at December 31, 2014 and $1.3 million at December 31, 2013; a reclassification of $15.5 million of contingently redeemable noncontrolling interests from "permanent" equity to "temporary" or mezzanine equity at March 31, 2015; and a reclassification of $15.9 million of contingently redeemable noncontrolling interests from "permanent" equity to "temporary" or mezzanine equity at June 30, 2015.

. . .

*Other Adjustments . . .*
The combined impact of these other corrections was an increase in compensation expense of $74 thousand for the year 2013 and an increase of $367 thousand for the year 2014; an increase in compensation expense of $4 thousand for the quarter ended March 31, 2014 and an increase of $621 thousand for the quarter ended March 31, 2015; and a decrease in compensation expense of $9 thousand for the quarter ended June 30, 2014 (decrease of $5 thousand for the six months ended June 30, 2014) and an increase of $470 thousand for the quarter ended June 30, 2015 (increase of $1.1 million for the six months ended June 30, 2015).

51.     On January 7, 2016, pre-market, Nobilis announced that defendant Lloyd had resigned as the Company's CEO.

52.     As a result of this news, Nobilis stock fell $0.63, or more than 20%, to close at $2.47 on January 7, 2016.

POST CLASS PERIOD DISLCOSURES

53.     On January 13, 2016, pre-market, Nobilis announced that the Company had filed its financial and operating results for the third quarter of 2015 on Form 10-Q with the SEC (the "Q3 2015 10-Q") and that it had filed all restated financial results arising from the restatement previously announced on January 5, 2016 (collectively, the "Financial Restatements").

54.     As Nobilis had disclosed on January 5, 2016, the Financial Restatements reflected numerous reclassifications with respect to warrants and options, business combination accounting, share-based compensation, and the other issues described *supra* at ¶¶ 10 and 50.

55.     However, Nobilis's Financial Restatements also revealed that the Company had overstated its net income for 2014 and the first quarter of 2015.  In the Company's original 2014 10-K, Nobilis had reported net income of $20.25 million.  In the Company's 2014 10-K/A, however, Nobilis restated its net income for 2014 as $16.19 million—approximately $4 million, or 20%, lower than Nobilis had reported in its 2014 10-K.

56.     Likewise, in the Company's original Q1 2015 10-Q, Nobilis had reported net income of $3.28 million.  In the Company's 2015 Q1 10-Q/A, however, Nobilis restated its net income for the quarter as *only $2,000*—more than $3.27 million, or more than 99%, lower than Nobilis had reported in its Q1 2015 10-Q.

57.     Later on January 13, 2016, *Seeking Alpha* published a report authored by a contributor under the name Southern Equities, entitled "Nobilis Earnings: Not What They Appear To Be".  Addressing Nobilis's Q3 2015 10-Q, the *Seeking Alpha* Report stated, in part:

> While results superficially appear to show financial strength, a deeper dive unveils the cold hard reality that Nobilis just had a disastrous [third] quarter.
>
> On an apples-to-apples basis, Nobilis actually reported adjusted EBITDA of **$5.3mn, or 40% below the original guidance of $9mn.** Management failed to back out the bargain purchase gain of $4.358mn. This was a one-time, below the operating line, non-cash item. In our years of analyzing financial statements, this non-GAAP accounting treatment was one of the most egregious we have seen.
>
> . . .
>
> Nobilis also had **negative operating cash flow** in Q3, a significant red flag on the quality of earnings, and days sales outstanding continued to rise. We believe that the fundamental performance of the business is in question.
>
> We also note that neither this press release, nor the press release announcing the sudden departure of the CEO mentioned Q4 preliminary results. Nor did they reaffirm 2015 adjusted EBITDA guidance of $42mn, or 2016 adjusted EBITDA guidance of $65mn, both given on the Q2 earnings press release.

58.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Nobilis securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Nobilis securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Nobilis or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Nobilis;

- whether the Individual Defendants caused Nobilis to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Nobilis securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

65.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Nobilis securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Nobilis securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

66.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

67.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

70.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Nobilis securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Nobilis securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

71.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Nobilis securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Nobilis's finances and business prospects.

72.      By virtue of their positions at Nobilis, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

73.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Nobilis securities from their personal portfolios.

74.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Nobilis, the Individual Defendants had knowledge of the details of Nobilis's internal affairs.

75.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Nobilis.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Nobilis's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Nobilis securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Nobilis's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise

acquired Nobilis securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

76.     During the Class Period, Nobilis securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Nobilis securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Nobilis securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Nobilis securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

77.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

79.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.     During the Class Period, the Individual Defendants participated in the operation and management of Nobilis, and conducted and participated, directly and indirectly, in the conduct of Nobilis's business affairs.  Because of their senior positions, they knew the adverse non-public information about Nobilis's misstatement of income and expenses and false financial statements.

81.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Nobilis's financial condition and results of operations, and to correct promptly any public statements issued by Nobilis which had become materially false or misleading.

82.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Nobilis disseminated in the marketplace during the Class Period concerning Nobilis's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Nobilis to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Nobilis within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Nobilis securities.

83.    Each of the Individual Defendants, therefore, acted as a controlling person of Nobilis.  By reason of their senior management positions and/or being directors of Nobilis, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Nobilis to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Nobilis and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

84.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Nobilis.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 19, 2016                    Respectfully submitted,



_____

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
State Bar No. 24001788
Southern District No. 25157
 8150 N. Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-4568
281/254-7789 (fax)
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*